

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| JMH:SP | *271 Cadman Plaza East* |
| F. #2023R00389 | *Brooklyn, New York 11201* |

November 15, 2023

By Email

The Honorable Joseph A. Marutollo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. James Young
                  Criminal Docket No. 23-728

Dear Judge Marutollo:

        The government respectfully submits this letter seeking the pretrial detention of James Young, whose initial appearance is scheduled before Your Honor later today, November 15, 2023. The defendant is charged with one count of Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a). Accordingly, and as set forth in more detail below, the defendant both poses a significant danger to the community and is a risk of flight and should be detained pending trial.

I.        Background

        On four different dates, April 12, 2023; April 29, 2023; June 26, 2023; and July 28, 2023, the defendant robbed various delis in Brooklyn and Queens at gunpoint. During each of those robberies, the defendant entered the location, pointed a black gun at the cashier, threw a black bookbag across the counter, and demanded money from the cashier. Security video footage from each of the delis showed that the defendant wore dark clothing and a mask over his face as he terrorized the cashiers, who were alone at the register. During one of the robberies, the video system also recorded the defendant pointing the gun at the cashier and brazenly threatening the cashier, "don't play with me, take the bag, money in the bag, cigarettes in the bag hurry up, you play any games I will shoot you, all the money in the bag."

        The defendant is charged by complaint with one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) in connection with the April 12, 2023 robbery. The defendant was arrested earlier today.

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(e).  A finding of dangerousness must be supported by clear and convincing evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995).  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community."  United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee."  United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight.  See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

Under the Bail Reform Act, the government may proceed by proffer.  Ferranti, 66 F.3d at 541; see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing).  Furthermore, "[t]he rules of evidence do not apply in a detention hearing."  Ferranti, 66 F.3d at 542.

III.    The Defendant Should Be Detained

The defendant executed this robbery, as well as the other three robberies, with forethought and planning.  The defendant ensured that he wore dark clothing, covered his face with a mask, and brought a gun to instill fear in the victim who was working at the cash register alone.  Furthermore, the defendant committed this robbery in the early hours after midnight, when it would be more likely that fewer eyewitnesses, such as staff or customers, would be present to thwart him.  While committing one robbery is brazen in itself, the defendant grew emboldened in a short amount of time and robbed the same store twice: once on April 12, 2023, and again on July 18, 2023.

For the reasons described below, the defendant poses a significant danger to the community and is a flight risk if released pending trial. No combination of bail conditions will ensure the safety of the community and the defendant's appearance before the court. Thus, a permanent order of detention should be entered.

A.  Nature and Circumstances of the Crime

The defendant robbed three different small businesses a total of four times over the course of three months. The defendant entered each deli in the early hours of the morning, a few hours after midnight, and demanded money from the lone cashier at the register. The defendant flung a bookbag across the counter, so that the cashier would have no time to react other than to see the defendant holding a gun pointed at him. After demanding money from the cashier, the defendant took the money in his bookbag and fled the location. The defendant deemed it worthwhile to terrorize these small businesses and the cashiers who worked there so that he could wrongfully pocket approximately $4,800 in cash and $300 worth of cigarettes.

The defendant escalated his tactics over time with his execution of the robberies. On April 29, 2023, the defendant committed the second robbery, and audio from the security video revealed that the defendant threatened the cashier repeatedly,

> "don't play with me, take the bag, money in the bag, cigarettes in the bag hurry up, you play any games I will shoot you, all the money in the bag, Newports in the bag, take the bag and put the Newports in it, more cigarettes, hurry up, hurry up or I'll shoot you."

Unsatisfied with the cashier hurriedly emptying the register and placing cigarettes in his bookbag, the defendant then ordered the cashier to lie on the ground, facedown, until the defendant left the deli. Although the cashier crouched down, the defendant further barked at him to be completely prostrate before the defendant fled from the location.

On July 18, 2023, the defendant returned to this same deli he had robbed on April 12, 2023 and again pointed a gun at the same cashier, demanded all the money from the register, and brandished a gun at the terrified cashier. The defendant stole another $1,200 from the deli on this date.

On June 26, 2023, the defendant committed the third robbery, again by throwing a bookbag at the cashier, pointing a gun, and demanding all the money in the register. This time, the defendant reached over the counter, lifted the tray in the register's till, and checked for himself that all the money had been emptied into his bookbag. Whereas the defendant had in his prior two robberies watched the cashier put money into his bookbag and leave, the defendant decided by the third robbery that he would reach over the counter and check for himself, for his own satisfaction and reassurance, that he had taken all the money in the till.

The defendant terrorized not only the cashiers in each of the four robberies he committed, but also the businesses themselves and the surrounding neighborhoods. For his own selfish gain, the defendant brandished a firearm, threatened the lives of people in the community, and stole hard-earned money from small businesses. The nature and the circumstances of these

robberies show that detention is necessary to protect the community and to prevent the defendant from robbing yet another store and escalating in his tactics.

B. History and Characteristics of the Defendant

The Court should also consider that the defendant's lengthy criminal history counsels in favor of detention. From 1997 through 2019 the defendant had significant periods of incarceration. In particular, the defendant has seven prior convictions, five of which were violent felonies, including four robberies and one attempted murder.

Reflecting the gravity of his prior convictions, the defendant has previously been sentenced for a robbery in New York State for a term of imprisonment as long as ten years. Additionally, the defendant was convicted in 2010 of Robbery in the First Degree in violation of New York State Penal Law § 160.15(4) for displaying what appears to be a firearm in the course of the robbery. The defendant's prior convictions reflect a history of the defendant putting his own interests first as he repeatedly committed crimes of violence against others. Notably, none of the defendant's prior convictions or terms of incarceration have deterred him from committing the robbery charged in the complaint before this Court.

Accordingly, the defendant's history and characteristics weigh heavily in favor of a finding of dangerousness and pretrial detention that cannot be mitigated by any bond conditions that this Court might set.

C. Seriousness of the Danger to the Community

Given the seriousness of the conduct outlined above, and the danger that the defendant's violent conduct presented to the community, releasing the defendant would present a serious danger to the community.

On four different dates, the defendant chose to terrorize small businesses and the vulnerable employees who were working overnight shifts. The defendant carefully disguised himself but made it very clear that he had a gun by pulling it out immediately and pointing it at the cashier as he began making his demands for money. The defendant made sure that the gun stayed in his hand, pointed at the cashier, and threatened to shoot the cashier if the cashier strayed from his instructions. The defendant even returned to the same deli he had robbed the first time to commit his fourth robbery. The defendant clearly puts his own interests, whether they be for money or for something as simple as cigarettes, above anyone else's well-being or safety.

While the owners of the businesses were accommodating of law enforcement's requests to recover security video footage of each of these robberies, these individuals, who often work late into vulnerable hours of the night, are entitled to work in places where they need not fear for their lives or safety. The defendant's actions directly threatened these employees' sense of safety and their livelihoods as these employees regularly work shifts into the vulnerable hours of the night.

In addition, the Court may and should consider the defendant's other acts of violence in assessing this factor. See United States v. Choudhry, 941 F. Supp. 2d 347, 359

4

(E.D.N.Y. 2013) ("[T]he Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release."). As described above, the defendant has six prior felony convictions, five of which are violent felonies. Specifically, four convictions were robbery offenses, and one was for an attempted murder offense. The defendant's violent conduct, whether pertaining to past acts of violence or those in the Hobbs Act robbery he is presently charged with, clearly shows that releasing him would pose a serious danger to the public.

    D.    <u>Risk of Flight</u>

Based on the severity of the potential sentence—up to 20 years in prison—the defendant will not abide by the law and will flee if given the opportunity, even if doing so places his life and the lives of others and their livelihoods at risk.

The Second Circuit has held that the possibility of a severe sentence—including a sentence less than the one the defendants face—can establish flight risk. <u>See</u> <u>United States v. Scali</u>, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); <u>see also</u> <u>United States v. Khusanov</u>, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.").

The defendant faces a significant prison term if convicted. "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." <u>United States v. Edwards</u>, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021). The government estimates that the defendant's Guidelines range for the conduct described above and his criminal history places his Guidelines range at 210-262 months, as he is likely to be adjudged a career offender under U.S.S.G. § 4B1.1. However, the actual maximum exposure the defendant faces is limited by the statutory maximum of 20 years' imprisonment for Hobbs Act robbery. <u>See</u> 18 U.S.C. § 1951(a). The higher exposure in the defendant's Guidelines range compared to the statutory maximum reflects the gravity of the charges and the underlying facts in this matter. Moreover, the government's investigation into the above-described robberies is ongoing. If the defendant faces additional charges, the defendant's exposure according to the Sentencing Guidelines is likely to increase.

In this case, where the possible prison term is significantly longer than any period of incarceration that the defendant has ever served, the defendant will likely not abide by the law. The defendant will flee if given the opportunity, even if doing so places other people's livelihoods, such as any potential suretors, at risk.

    E.    <u>Strength of the Evidence</u>

The evidence against the defendant is compelling. The government intends to prove the defendant's guilt at trial using, among other things, video and photographic evidence capturing and relating to his criminal conduct, witness testimony, and audio recordings.

For example, although the defendant is masked during the commission of the robberies, security video footage from the building where he resides depicts him at times unmasked, leaving the location wearing the same clothing and shoes that he wears during the

subsequent robbery. A photo of the defendant leaving his residence prior to the robbery on June 26, 2023 and a photo of the defendant inside the deli he robbed that same day are below. A photo of the defendant returning to his residence unmasked is on the following page.







Furthermore, the defendant's voice was captured on security video footage during the second robbery. A comparison of the defendant's distinctive voice on that footage to multiple recorded calls from the defendant's prior incarceration at Rikers Island shows that the robber's voice belongs to the defendant.

IV.     Conclusion

        For the reasons set forth above, including the brazen and violent nature of the defendant's conduct, the callous and wanton disregard for others' safety, and the terror that the defendant inflicted, the government respectfully requests that the defendant be detained pending trial.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:    /s/ Stephanie Pak
       Stephanie Pak
       Assistant U.S. Attorney
       (718) 254-6064

cc:    Clerk of Court (JAM) (By Email)
       Counsel of Record (By Email)