1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2

 3    - - - - - - - - - - - - - X

 4   UNITED STATES OF AMERICA,    :    23-CR-475(DLI)

 5           Plaintiff ,          :
                                        United States Courthouse
 6      -against-                 :    Brooklyn, New York

 7   JAMES YOUNG,                 :
                                        December 3, 2024
 8           Defendant.           :    2:45 p.m.

 9    - - - - - - - - - - - - X

10

11         TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
          BEFORE THE HONORABLE DORA L. IRIZARRY
12              UNITED STATES DISTRICT JUDGE

13
     APPEARANCES:
14

15   For the Government:        BREON PEACE
                                United States Attorney
16                              BY: STEPHANIE PAK,
                                Assistant United States Attorney
17                              271 Cadman Plaza East
                                Brooklyn, New York 11201
18

19   For the Defendant:         FEDERAL DEFENDERS OF NEW YORK
                                One Pierrepont Plaza, 16th Floor
20                              Brooklyn, New York 11201
                                BY: ALLEGRA GLASHAUSSER, ESQ.
21

22   Court Reporter:            Andronikh M. Barna
                                225 Cadman Plaza East
23                              Brooklyn, New York
                                (718) 613-2178
24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.
```

2

1    THE COURTROOM DEPUTY:  Criminal cause for pleading,

2    Docket No. 23-CR-475, United States vs. James Young.

3    Please state your appearances.

4    MS. PAK:  Stephanie Pak for the Government.

5    Good afternoon, Your Honor.

6    THE COURT:  Good afternoon.

7    MS. GLASHAUSSER:  Good afternoon, Your Honor.

8    Allegra Glashuasser representing Mr. Young, who is

9    seated next to me.

10    THE COURT:  Good afternoon to both of you.

11    THE DEFENDANT:  Good afternoon.

12    THE COURT:  It's my understanding that Mr. Young

13    wishes to withdraw his previously entered plea of not guilty

14    to the indictment and enter a plea of guilty pursuant to a

15    plea agreement to Count One of the indictment.

16    Is that correct, Ms. Glashuasser?

17    MS. GLASHAUSSER:  Yes, Your Honor.

18    THE COURT:  Mr. Young, is that what you wish to do

19    today, sir?

20    THE DEFENDANT:  Yes, Your Honor.

21    THE COURT:  Okay.

22    And as usual, I'm going to ask everyone to remain

23    seated for this proceeding.

24    And would you please administer the oath to

25    Mr. Young.

3

1          THE COURTROOM DEPUTY:  Please raise your right hand.

2          (Defendant sworn/affirmed.)

3          THE COURTROOM DEPUTY:  Thank you.

4          THE COURT:  And, Mr. Young, I'm going to ask you to

5   keep your voice up nice and loud.  Okay?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.

8          And in order for me to determine whether your plea

9   is a valid plea, I need to ask you certain questions.  And

10  with respect to these questions and anything else that gets

11  discussed during this proceeding, if there is anything at all

12  that you do not understand, please let me know that; I will be

13  happy to reword the question or explain whatever it is that

14  you do not understand.  And it's important that you do not

15  answer a question if you do not understand it.  It does not

16  matter to me how many times you ask me to explain something.

17  Okay?

18          So, do I have your assurance that you will let me

19  know if there is anything that you do not understand?

20          THE DEFENDANT:  Yes, you do.

21          THE COURT:  Thank you very much.

22          Now, some of these questions may seem a little

23  counterintuitive, but please bear with me because I have to

24  make a complete record.

25          Are you able to speak and understand English?

4

1                THE DEFENDANT:  Yes.

2                THE COURT:  Are you able too read and write in the

3     English language?

4                THE DEFENDANT:  Yes.

5                THE COURT:  Have you had any difficulty at all

6     communicating with your attorney during this case?

7                THE DEFENDANT:  No, I have not.

8                THE COURT:  And do you understand that you have the

9     right to be represented by counsel at trial and every other

10    stage of the proceedings, including this one?

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  Do you understand that if you cannot

13    afford counsel, the Court may appoint counsel for you at no

14    cost to you?  And, in fact, Ms. Glashuasser is with the

15    Federal Defenders office and she has been pointed by the Court

16    at no cost to you.

17               Do you understand that?

18               THE DEFENDANT:  Yes, Your Honor.

19               THE COURT:  And if at any point in time you would

20    like to consult with your attorney, just let me know that and

21    I will give you the opportunity to consult with her.  And,

22    again, it doesn't matter to me how many times you ask to

23    consult with her.  I just want to make sure that you feel

24    satisfied that you have had sufficient time to consult with

25    your attorney.

5

1          Do I have your assurance that you will let me know
2     if you wish to consult with Ms. Glashuasser?
3               THE DEFENDANT:  Yes, you do, Your Honor.
4               THE COURT:  Thank you.
5          Now, you have sworn to tell the truth.  This means
6     that if you answer any of my questions falsely, your answers
7     later may be used against you in a separate prosecution for
8     the crimes of perjury or of making a false statement.  So
9     those are entirely separate cases from this one.
10              Do you understand that?
11              THE DEFENDANT:  Yes, I do, Your Honor.
12              THE COURT:  I'm going to apologize upfront because
13    my voice keeps kind of coming and going.  Just tell me if you
14    don't hear me properly.
15              For the record, sir, what is your full name?
16              THE DEFENDANT:  James Edmund Young.
17              THE COURT:  And could you spell Edmund for me?
18              THE DEFENDANT:  E-d-m-u-n-d.
19              THE COURT:  Okay.
20              How old are you now, sir?
21              THE DEFENDANT:  44.
22              THE COURT:  And where were you born, just generally?
23              THE DEFENDANT:  Elmhurst Hospital, Queens, New York.
24              THE COURT:  And what is the highest grade that you
25    completed in school?

6

1          THE DEFENDANT:  Twelve.

2          THE COURT:  So you have a high school graduate

3    diploma?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.

6          Where did you go to school?

7          THE DEFENDANT:  Long Island City High School,

8    Queens, New York, Broadway and 21st Street, 11101.

9          THE COURT:  Okay.  Still remember that, huh?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Okay.  All right.  I don't remember the

12    zip code of my high school.

13          Are you presently or have you recently been under

14    the care of a doctor?

15          Now, we know that you have been under medical care,

16    correct?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.

19          And with respect to that medical care, have you also

20    been under the care of a psychiatrist?

21          Any kind of psychiatric or counseling or anything

22    like that?

23          THE DEFENDANT:  No.

24          THE COURT:  Have you ever been hospitalized or

25    treated for any mental illness?

7

1          THE DEFENDANT:  No.

2          THE COURT:  And with respect to the medical care,

3    we've been getting weekly updates from the Government.  So, if

4    it's all right with Counsel, I would just like to incorporate

5    those.  They've been filed under seal on the docket and

6    outline the care that Mr. Young has been getting, or at times

7    not getting.

8          MS. GLASHAUSSER:  That's fine, Your Honor.

9          THE COURT:  Okay.

10         Have you ever been hospitalized or treated for

11   addiction to drugs or to alcohol?  That would include

12   outpatient or residential drug treatment.

13         THE DEFENDANT:  Never.

14         THE COURT:  In the past 24 hours, have you consumed

15   any narcotic drugs?

16         THE DEFENDANT:  No.

17         THE COURT:  Are they giving you antibiotics for your

18   infection?

19         THE DEFENDANT:  No.

20         THE COURT:  Okay.

21         And aside from the medications that you had been

22   given in connection with your care right now that we've been

23   documenting, have you consumed any other kinds of medications,

24   including what might be over the counter, like aspirin,

25   Tylenol, anything like that?

8

1          THE DEFENDANT:  Stool softener.

2          THE COURT:  Okay.  All right.

3          But is that something that they're also giving you

4  as part of your treatment?

5          THE DEFENDANT:  They started yesterday because I was

6  constipated for four days.

7          THE COURT:  Okay.  All right.

8          Okay.  And in the past 24 hours, have you consumed

9  any alcoholic beverages?

10          THE DEFENDANT:  No.

11          THE COURT:  As you sit here right now, is your mind

12  clear?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand everything that is

15  going on here today?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Ms. Glashuasser, have you discussed this

18  matter with your client?

19          MS. GLASHAUSSER:  Yes, Your Honor.

20          THE COURT:  And in your opinion, is he capable of

21  understanding the nature of these proceedings?

22          MS. GLASHAUSSER:  Yes, Your Honor.

23          THE COURT:  In your opinion, does he understand the

24  rights he will be waiving by pleading guilty?

25          MS. GLASHAUSSER:  Yes, Your Honor.

9

1          THE COURT:  Do you have any doubt as to Mr. Young's

2    competence to plead at this time?

3          MS. GLASHAUSSER:  No, Your Honor.

4          THE COURT:  Have you advised him of the maximum

5    sentence and fine that can be imposed?

6          MS. GLASHAUSSER:  Yes, Your Honor.

7          THE COURT:  Have you also discussed with Mr. Young

8    the operation of the advisory Sentencing Guidelines?

9          MS. GLASHAUSSER:  Yes, Your Honor.

10          THE COURT:  Mr. Young, have you had sufficient

11    opportunity to discuss this case with Ms. Glashuasser?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And are you fully satisfied with the

14    representation and advice given to you in this case by your

15    attorney?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Have you received a copy of the

18    indictment that has been filed in this case?  The indictment

19    is that document that contains the charges lodged against you.

20          THE DEFENDANT:  Yes.

21          THE COURT:  And specifically, have you discussed

22    with Ms. Glashuasser Count Number One?  It charges you with

23    what is called a Hobbs Act robbery.  Have you consulted with

24    her about that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Now, that charge reads as follows, that

2    on or about April 12, 2023, within the Eastern District of

3    New York and elsewhere -- the Eastern District of New York

4    includes Brooklyn, Queens, Staten Island and all of

5    Long Island -- the defendant, James Young, together with

6    others, did knowingly and intentionally obstruct, delay and

7    affect commerce, and the movement of articles and commodities

8    in commerce, by robbery, to wit, the robbery of United States

9    currency -- in other words, money -- from a deli and smoke

10   shop located on Broadway in Queens, New York, the identity of

11   which is known to the Grand Jury.

12          Do you understand that charge?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.

15          In essence, a Hobbs Act robbery usually refers to

16   the robbery of some sort of commercial establishment.

17          Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay.

20          Now, again, I'm going to remind you that if there is

21   anything you do not understand, please let me know; I will be

22   happy to explain it.  The reason why I repeat that is because

23   I am about to explain to you the rights that you have that,

24   indeed, anybody has when they are charged with a crime.  These

25   are rights you have under the Constitution and laws of the

1  United States.  It's important that you understand these

2  rights because when you plead guilty, you waive these rights

3  or you give them up.  So, later on it's going to be too late

4  to say:  I didn't understand what Judge Irizzary was telling

5  me.  Okay?  So now would be the time.

6          Again, do I have your assurance you will let me know

7  if there is anything at all you do not understand?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Or if you want to consult with

10  Ms. Glashuasser?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Okay.  Thank you.

13          So, the first and the most important thing that you

14  must understand is that you do not have to plead guilty even

15  if you are guilty.  And that's because under our legal system,

16  the prosecutor, or the Government, has the burden of proving

17  the guilt of a defendant beyond a reasonable doubt.  And if

18  the prosecutor cannot or does not meet her burden of proof,

19  then the jury has the duty to find the defendant not guilty

20  even if the defendant is guilty.  In other words, it's a

21  question of the jury's determination about the quality and the

22  quantity of the proof that's presented by the Government.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  What this also means is that even if you

12

1  are guilty, you have a choice.  You have two choices.  And it

2  is up to you to decide what to do.  It is not up to your

3  lawyer, your family, your friends or anyone else.  You may

4  choose to withdraw your previously entered plea of not guilty

5  and plead guilty, as you apparently wish to do today.  That's

6  one choice.  Or, you may choose to go to trial simply by

7  persisting in your plea of not guilty and make the Government

8  meet its burden of proving your guilt beyond a reasonable

9  doubt.

10         Do you understand those two choices?

11         THE DEFENDANT:  Yes.

12         THE COURT:  If you plead not guilty, under the

13  Constitution and laws of the United States you are entitled to

14  a speedy and public trial by a jury with the assistance of

15  counsel on the charges that are contained in the indictment

16  that is filed with the Court.

17         Do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  At the trial, you would be presumed

20  innocent.  You would not have to prove that you are innocent.

21  It is the Government's burden to overcome that presumption and

22  prove you guilty by competent evidence -- that means

23  admissible evidence -- and beyond a reasonable doubt.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

13

1          THE COURT:  If the Government does not meet its

2    burden, then the jury would have the duty to find you not

3    guilty.

4          Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  By pleading guilty, you are giving up

7    your right to have the Government satisfy its burden that you

8    are guilty beyond a reasonable doubt.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  In the course of the trial, the

12    witnesses for the Government would have to come to court and

13    testify in your presence.  Your attorney would have the right

14    to cross-examine the witnesses for the Government.  She could

15    object to any evidence offered by the Government and she could

16    offer evidence on your behalf, which includes the right to

17    subpoena or compel witnesses to come to court and testify.

18    Your attorney also may raise any defenses that you may have

19    available to you under the law.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  By pleading guilty and if I accept your

23    plea, you give up your right to confront the witnesses who

24    testify against you.  You also give up your right to offer

25    evidence on your own behalf.  You give up your right to compel

14

1    witnesses to come to court and testify.  And, you also give up

2    your right to raise any defenses you may have under the law.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  At a trial, you have the right to

6    testify on your own behalf, but only if you choose to do so.

7    You are not required to testify.  Under the Constitution of

8    the United States, a defendant in a criminal case cannot be

9    forced to take the witness stand at his trial and say anything

10   that could be used against him to show that he is guilty of

11   the crimes with which he is charged.  If you decided not to

12   testify, then I would instruct the jury that they could not

13   hold your silence against you.  This is called your right

14   against self-incrimination.

15             Do you understand that right?

16             THE DEFENDANT:  Yes.

17             THE COURT:  By pleading guilty, you are admitting

18   your guilt from your own mouth and you give up your right

19   against self-incrimination.

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  If you plead guilty, I must ask you

23   questions about what you did in order to satisfy myself that

24   you, in fact, are guilty of the charge to which you are

25   pleading guilty and you will have to answer my questions

1    truthfully and acknowledge your guilt.  In that regard, I

2    remind you that you have taken an oath to answer my questions

3    truthfully.

4              Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  In other words, it is not enough just to

7    say that you are guilty of the particular -- in other words,

8    it's not enough just to say that you are guilty, you must tell

9    me what it is that you did that makes you guilty of the

10   particular charge to which you are pleading guilty.

11             Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  If you plead guilty and I accept your

14   plea, you will be giving up your constitutional right to a

15   trial and all these other rights that I have just discussed.

16   There will be no further trial of any kind.  I will simply

17   enter a judgment of guilty on the basis of your guilty plea.

18             Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Now, if you decided to go to trial and a

21   jury found you guilty, you could appeal both the verdict and

22   the sentence.  By pleading guilty and by entering into the

23   plea agreement that's before the Court, you will have waived

24   or given up your right to appeal or to collaterally attack all

25   or part of the sentence that I will impose if I should impose

1   a term of imprisonment of 87 months or something less than

2   that.

3           Do you understand that?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Okay.

6           I'm going to talk some more about the plea

7   agreement, but that particular paragraph, paragraph 4, that

8   includes that waiver of right to appeal, also has some other

9   waivers in there; for example, any defenses based on statute

10  of limitations or venue or constitutionality of the statute

11  and various other waivers.

12          Are you familiar with that paragraph?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Have you had a chance to review that

15  paragraph specifically with your lawyer?

16          THE DEFENDANT:  Yes, I have.

17          THE COURT:  Okay.

18          And you know, paragraph 4, because I made reference

19  to it doesn't mean it's more important than anything else that

20  is in that plea agreement that we are going to talk about some

21  more later.  The entire document is important.  But since

22  we're talking about the waiver, I want to make sure you

23  understand that there were some other things included in

24  there.

25          Do you understand all that?

17

1          THE DEFENDANT:  Yes.

2          THE COURT:  Any questions at all about it?

3          THE DEFENDANT:  None at all.

4          THE COURT:  Thank you.

5          Are you willing to give up your right to a trial and

6    the other rights that I have just discussed?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, I mentioned the plea agreement.  I

9    do have before me a document that consists of multiple pages

10   entitled Plea Agreement.  It's marked as Government Exhibit

11   No. 1.  On the last page it has today's date.

12         Ms. Pak, is that your signature in the upper

13   right-hand corner?

14         MS. PAK:  Yes, that is, Your Honor.

15         THE COURT:  And do you recognize the signature below

16   that of yours to be that of Philip Pilmar Supervising

17   Assistant U.S. Attorney?

18         MS. PAK:  I do, Your Honor.

19         THE COURT:  Thank you.

20         So right below Mr. Pilmar's signature, there is a

21   very small typewritten paragraph that reads as follows:  I

22   have read the entire agreement and discussed it with my

23   attorney.  I understand all of its terms and am entering into

24   it knowingly and voluntarily.

25         Right below that, Mr. Young, is that your signature?

18

1          THE DEFENDANT:  Yes.

2          THE COURT:  And Ms. Glashuasser, below Mr. Young's

3    signature, is that your signature?

4          MS. GLASHAUSSER:  Yes, Your Honor.

5          THE COURT:  Thank you.

6          Mr. Young, have you read this written plea

7    agreement?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And have you reviewed this entire plea

10   agreement with your attorney?

11         THE DEFENDANT:  Yes, I have.

12         THE COURT:  And do you understand all of the terms

13   of this written plea agreement?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  And does this written plea agreement

16   accurately represent the entire understanding or agreement

17   that you have reached with the Government?

18         THE DEFENDANT:  Yes, it does.

19         THE COURT:  Ms. Glashuasser, have you read and

20   reviewed with Mr. Young the written plea agreement that is

21   before the Court?

22         MS. GLASHAUSSER:  Yes, Your Honor.

23         THE COURT:  And does it reflect your understanding

24   of the entire agreement that your client has entered into with

25   the Government?

1          MS. GLASHAUSSER:  Yes, Your Honor.

2          THE COURT:  Ms. Pak, does this written plea

3    agreement reflect the Government's understanding of the entire

4    agreement that it has entered into with Ms. Glashuasser and

5    her client?

6          MS. PAK:  Yes, it does, Your Honor.

7          THE COURT:  Thank you.

8          Now I'm about to explain to you the sentencing

9    scheme that is applicable here, and that has been laid out for

10   you in the first few pages of the plea agreement.

11         Before we get to that, I just want to go over some

12   very practical things that will happen if I accept your plea

13   of guilty today.  Okay?

14         THE DEFENDANT:  Yes.

15         THE COURT:  If that happens, then what is going to

16   happen is, by electronic order, I am going to set a schedule.

17   It's going to have two dates.  One date is going to be for the

18   sentencing hearing date.  Okay?  Then you come to court.  That

19   is for the date of sentencing.  Your lawyer, Probation, the

20   Government and the Court, we are all going to be here that

21   day.

22         There is a second date which is also important and

23   that is the date for Probation to disclose the presentence

24   report.  You don't come to court on that day.  That is for

25   Probation to disclose, finish preparation of and disclose the

20

1  resentence report.  And it's also going to have a whole

2  schedule for the attorneys to file objections to the

3  presentence report, respond to each other's objections and to

4  submit sentencing memoranda for the Court.

5          Now, that presentence report is very important

6  because it will assist the Court in determining what sentence

7  to impose.

8          So, Probation is going to interview you.  You will

9  have a right to have your attorney present for that interview,

10 which I strongly recommend and I have no doubt Ms. Glashuasser

11 will be there with you.  Okay?

12         It's very important because they are going to talk

13 to you about everything about your life, from the day you were

14 born, your schooling, any jobs that you had, your health.

15 Okay?  Your finances.  All of those things.  Okay?  Because

16 there is a lot that I have to decide:  Whether to impose a

17 fine, how much fine I can impose, whether you can afford to

18 pay a fine.  We will talk some more about this, but there is

19 going to be restitution here.  That is something else I have

20 to take into consideration, could you afford a fine and

21 restitution.  So, it's important you are honest with Probation

22 with respect to those things.

23         And obviously, it's important for me to know about

24 your background because at the end of the day, when I impose

25 sentence, it's on a human being; it's not on a piece of paper,

21

1   it's not on a case number.  So, how did Mr. Young get here?

2   You know, what was his background?  Right?  What is he about?

3   That's what that is going to let me know.

4            Probation, you should understand, is an arm of the

5   Court.  They do not work for the Defense, they do not work for

6   the Government.  Their role, among other roles, is to help the

7   Court in determining what is an appropriate sentence in every

8   case.  So, they're also going to talk to the Government to

9   find out what the evidence was in the case, what can they

10  prove by a preponderance of the evidence.  So they'll talk to

11  the Government.  And Probation is also going to do its own

12  calculation of what they think the guideline range should be.

13  It might be different from what your lawyer thinks it might be

14  or the Government thinks it might be.  They might agree.  I

15  might disagree with Probation.  Because ultimately, I make

16  that final decision.  They are going to make their own

17  calculation, which also includes calculating your criminal

18  history.  Right?  And the offense conduct points that go

19  towards making that calculation.  And sometimes Probation

20  finds information that was not available to either the Defense

21  or the Government.  It happens sometimes.  So sometimes they

22  come up with a different number:

23            They are also going to point out any factors that

24  they think would warrant either a departure under the advisory

25  guidelines, either above or below the guidelines, or what is

22

1  called a variance or a nonguidelines sentence, either above or

2  below whatever the guideline range is.  So they are going to

3  point that out as well.

4          And they are going to make a sentence recommendation

5  as well.  And it's my policy to disclose that sentence

6  recommendation to all the parties so we are all working with

7  the same information.  And there a lot that I have to take

8  into consideration, so I also like to have the lawyers give me

9  something in writing with respect to what their sentence

10 recommendation is and why.  Okay?

11         With that presentence report, like I said, the

12 lawyers are going to have a chance -- you will have a chance

13 to review it with your attorney, object to anything you think

14 is incorrect there.  If we have to have a hearing, we can have

15 a hearing.  It's called a Fatico hearing.  Okay?  It doesn't

16 happen all the time, but it can be held if we need to

17 determine some facts; if there is a dispute about facts that

18 go into the presentence report.  Okay?

19         So, that presentence report is going to take a while

20 to prepare.  So I don't want you to despair or think that

21 we've all forgotten about you, I took a plea and it's been a

22 while.  It could take up to 12 weeks, even longer sometimes

23 depending on how complicated the case is.  We have not

24 forgotten.  There is just a lot of work that goes into that

25 preparation for sentencing.  Okay?  And that is why I am

1    explaining that to you, because I want you to understand that

2    from my point of view what happens behind the scenes.  Okay?

3             In addition, when we do get to the sentencing

4    hearing, of course, as I said, everyone is going to be here.

5    At that time, if there are any outstanding objections to the

6    presentence report that don't require a hearing or maybe I've

7    already -- there are things that come up even after a hearing

8    has been held, I will resolve those.

9             And at that time it's my job to determine what the

10   guideline range should be.  It could be the same as what the

11   parties think it is, I could disagree, I could agree with

12   Probation, I might disagree.  But I make that final decision.

13   And sometimes I need to hear from the parties and Probation at

14   the sentence hearing.  Okay?  So we won't really know until

15   that day what exactly will be the guideline range that applies

16   here.

17            In addition, because I have to consider other things

18   besides the guidelines, which are not mandatory by the way,

19   okay, they're not binding on the Court, I have to consider

20   what are called 3553(a) factors.  They are factors that are in

21   a statute.  Okay?

22            So I will turn the floor over to the lawyers so that

23   they can give me their recommendations and why.

24            The law also gives you a right to make a statement

25   before I impose sentence and I will be happy to hear from you

1  if you wish to make a statement.

2         So it's not until all of that has happened that I

3  will impose sentence.

4         I know it's a long explanation, but do you

5  understand that process?

6         THE DEFENDANT:  Yes, I do.

7         THE COURT:  Okay.

8         So the reason why I explain all of this to you today

9  is because I do not want you to assume from anything that I

10 tell you today that I have some preconceived idea as to what

11 sentence I will be imposing in this case, because I don't have

12 any of this information.  I have none of it.  I haven't heard

13 from anybody.  Okay?  So, I don't want you to assume that.

14        Do you understand?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Okay.

17        However, I do have an obligation as we sit here

18 today to make sure that you fully understand the consequences

19 of pleading guilty, which takes us to the sentencing scheme

20 that is applicable here.

21        Do you follow me so far?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Okay.  Thank you.

24        All right.  So, you're pleading guilty under

25 Count One, the Hobbs Act robbery that I read to you a moment

25

1    ago.  That has no minimum term of imprisonment and the maximum

2    term of imprisonment is 20 years.  If I were to impose a term

3    of imprisonment, I would also impose a term of supervised

4    release.  The maximum term of supervised release that I could

5    impose is three years.  So, what that would mean is that once

6    you're done serving your initial sentence, then you would come

7    under the supervision of the Department of Probation.  And

8    they're going to have what are called standard conditions of

9    supervised release; for example, that you report to Probation

10   as directed.  I may impose certain special conditions of

11   supervised release, for example, that you not possess a

12   firearm.  If you were to violate any one of the conditions of

13   supervised release, whether it's a special condition or a

14   standard or mandatory condition of supervised release, then

15   you can receive additional jail time up to two years.  You

16   will not get credit for any of the time that you spent on

17   supervised release, even if you were close to the end of your

18   supervised release term, and you will not get credit for any

19   time that you already spent in jail under your original

20   sentence.

21             Do you understand all that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Okay.

24             There is a maximum fine, which is the greater of

25   $250,000 or twice the gross gain or twice the gross loss.

26

1          And what is the gross gain or loss here, Ms. Pak?

2          MS. PAK:  The loss here is $1,200 for Count One.

3          THE COURT:  All right.

4          So then the operative maximum fine would be

5    $250,000.

6          And again, as I mentioned to you, whether or not I

7    impose a fine is going to depend on your finances and all of

8    that.

9          Understand?

10          THE DEFENDANT:  Yes.

11          THE COURT:  There is also restitution applicable

12    here.  And according to the plea agreement, you have agreed to

13    restitution in the amount of $5,100, which includes

14    restitution for victims in all counts of the indictment.

15          Correct?  That's four counts in the indictment?

16          MS. PAK:  That's correct, Your Honor.

17          THE COURT:  Okay.

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Okay.

21          Is the Government planning to submit a separate

22    restitution order?

23          MS. PAK:  I believe, Your Honor, upon consultation

24    with Defense Counsel, we will be most likely doing so.

25          THE COURT:  Okay.

27

1          So if you would kindly do that by January 14th --
2    we're already in 2024 -- '25.
3          MS. PAK:  Yes, Your Honor.
4          THE COURT:  Okay.  Thank you.
5          And if you could send a copy of that in Word to my
6    deputy in case something needs to get attested, I would
7    appreciate that.
8          MS. PAK:  A Word version, Your Honor?
9          THE COURT:  Yes.
10         MS. PAK:  Yes, Your Honor.  Certainly.
11         THE COURT:  You can send it both in PDF and in Word,
12   just in case.
13         That should give you time enough to review it with
14   Ms. Glashuasser.
15         There is also a special assessment of $100 that the
16   Court must impose.  Those are court costs.
17         Now, there are a couple of things that are not
18   included in the plea agreement but that I like to review
19   because I'm just a belt and suspenders kind of person.
20         So, you have told me that you were born in Queens,
21   New York.  Very specifically, you gave me the name of the
22   hospital and all of that.  So, I have no doubt to believe that
23   you are a citizen of the United States.  However, it has
24   happened that people have sat in that chair and have thought
25   that they were citizens because they have early baby memories

28

1    of being in this country and it turned out that they were not

2    citizens.  So, I just want to advise you that if it should

3    turn out that you are not a citizen of the United States, that

4    you could be removed from the United States to whatever your

5    country of origin is.  Okay?

6              Now, I'm just saying that out of an abundance of

7    caution.  Because I get this quizzical look all the time:  Why

8    is she telling me that?  I was born in Brooklyn or Queens.

9    All right?  Because it's happened that people have sat there

10   and thought that they were citizens when, in fact, they were

11   not.

12             Now, the Government doesn't think that you were born

13   somewhere else, okay, from the way that the plea agreement was

14   drafted and I'm sure.  But I just wanted to advise you of

15   that.

16             Understanding that, do you still wish to enter a

17   plea of guilty?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.

20             Now, the other thing that I do want to advise you

21   about is that you are pleading guilty to a felony.  Okay?  So,

22   a felony is a criminal offense for which a sentence of more

23   than one year can be imposed.  What that means is that under

24   the current state of federal law, you would be a person who is

25   prohibited from possessing a firearm.  So, if you were found

1  in possession of a firearm anywhere in the United States or in

2  the territories of the United States where federal law

3  applies, that is a crime for which a maximum sentence of

4  15 years could be imposed if you were found guilty of

5  possessing a firearm.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.

9          New York State has a similar statute, by the way.

10  Whether they apply it or not, I have no idea.

11          But you should be aware that under federal law as it

12  stands right now, the possession of a firearm by a person with

13  a felony conviction is an offense.  Okay?  A criminal offense.

14  Another felony.  And you could go to jail for up to 15 years.

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Okay.

18          And, in addition, if you were found guilty of that

19  offense, that would also be a violation of your supervised

20  release.  In fact, the mere possession of the firearm could be

21  a violation of your supervised release.  And again, you could

22  go to jail for up to two years.  If you were found guilty of

23  the felony of being in possession of the firearm, then that

24  sentence for the violation of the supervised release would

25  have to run consecutive to that.  Right?  So one sentence

1  would follow the other.

2         Do you understand that I'm saying?

3         THE DEFENDANT:  Yes.

4         THE COURT:  Okay.

5         Understanding all that, do you still wish to enter a

6  plea of guilty?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  Any questions about any of this?

9         THE DEFENDANT:  No.

10         THE COURT:  Now, I gave you a whole long explanation

11  about what goes into sentencing.  The bottom line is, until

12  the date of sentencing, when we get here and everybody has had

13  a chance to look at everything, we're not going to know until

14  I actually pronounce it what the guideline range is going to

15  be and we're also not going to know whether or not there are

16  departures that are applicable, either above or below the

17  guideline range, or whether or not a nonguidelines sentence is

18  reasonable under all of the circumstances.

19         Nonetheless, I am going to ask the lawyers at this

20  time to give me their best estimate as to what the guidelines

21  are likely to say based on the facts that are available to

22  them at this point in time.

23         Please keep in mind that this is a guess that could

24  be wrong.  Do you understand that?

25         THE DEFENDANT:  Yes.

1          THE COURT:  And Ms. Pak, what is the Government's

2    estimate as to where within the guidelines Mr. Young falls?

3          MS. PAK:  Your Honor, the Government's estimate,

4    based on an offense level totaling 23 and a Criminal History

5    Category of V, accounting for both the two-level reduction for

6    acceptance of responsibility under the Sentencing Guidelines

7    Section 3E1.1(a) as well as the additional third point for

8    early acceptance of responsibility bringing down the offense

9    level of 23 to 20 and then taking into account the Criminal

10   History Category of V, the current estimate is a range of

11   imprisonment of 63 to 78 months.  That's six-three.

12         THE COURT:  And Ms. Glashuasser, are you in

13   agreement with that estimate?

14         MS. GLASHAUSSER:  Yes, Your Honor.

15         THE COURT:  I know that the parties, in the plea

16   agreement, also stipulated to that guidelines calculation, but

17   as the plea agreement accounts for, ultimately the Court makes

18   that final determination and it could be different from what

19   is in the plea agreement.

20         Do you understand that, Mr. Young?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Okay.

23         Do you understand that this estimate that we have

24   just talked about here is not binding on the Government,

25   Probation or the Court?

32

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Do you also understand that if this

3    estimate is wrong, you will not be permitted to withdraw your

4    plea of guilty?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  Do you have any questions that you would

7    like to ask me about the charge, your rights, or anything else

8    at all concerning this matter?

9          THE DEFENDANT:  I do not have any questions at this

10   time.

11         THE COURT:  Okay.  Thank you.

12         You say "at this time."  This is the time to ask.

13         No?

14         THE DEFENDANT:  No questions.

15         THE COURT:  Okay.

16         Ms. Glashuasser, do you know of any reason why your

17   client should not plead guilty?

18         MS. GLASHAUSSER:  No, Your Honor.

19         THE COURT:  Are you aware of any viable legal

20   defense to the charge?

21         MS. GLASHAUSSER:  No, Your Honor.

22         THE COURT:  Mr. Young, are you ready to plead at

23   this time?

24         THE DEFENDANT:  Yes, I am, Your Honor.

25         THE COURT:  Do you wish to consult with

1  Ms. Glashuasser before you plead?

2          THE DEFENDANT:  I do not wish to consult.

3          THE COURT:  And what is your plea to Count One of

4  the indictment charging you with Hobbs Act robbery, guilty or

5  not guilty?

6          THE DEFENDANT:  Guilty.

7          THE COURT:  Are you pleading guilty voluntarily and

8  of your own free will?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Has anyone threatened or forced you to

11 plead guilty?

12         THE DEFENDANT:  No.

13         THE COURT:  Other than the promises contained in the

14 written plea agreement, has anyone made any other promises to

15 you to get you to plead guilty?

16         THE DEFENDANT:  No.

17         THE COURT:  Has anyone made any promise to you as to

18 what your final sentence will be?

19         THE DEFENDANT:  No.

20         THE COURT:  Do you want me to review the charges

21 with you again?

22         THE DEFENDANT:  No.

23         THE COURT:  So at this point in time I would like

24 for you to describe for me in your own words what you did in

25 connection with the acts that are charged in Count One.

34

1          THE DEFENDANT:  On 4/12/23, I brandished a firearm

2     in a commercial deli to receive U.S. currency and I obtained

3     it.  And I was in Queens, New York.

4          THE COURT:  Okay.

5          And what is the Government's proof with respect to

6     the obstruction, delay and affecting commerce and the movement

7     of articles and commodities in commerce?

8          MS. PAK:  Your Honor, the Government's proof would

9     be the theft of U.S. currency that was stolen from the

10    establishment on this date, that currency having been used in

11    interstate commerce.  The establishment that was robbed does

12    sell goods that are -- that travel through interstate

13    commerce, that cash is exchanged as part of that as well.

14         THE COURT:  Okay.

15         Is the allocution satisfactory to the Government?

16         MS. PAK:  Yes, Your Honor, it is.

17         MS. GLASHAUSSER:  Your Honor, if I may?

18         THE COURT:  Yes, you may.

19         MS. GLASHAUSSER:  I would like if Mr. Young could

20    redo the allocution, which is a bit differently than we had

21    planned, if that's all right, and have the second allocution

22    be noted as the correct one.

23         THE COURT:  Okay.

24         You have something written?

25         MS. GLASHAUSSER:  Yes, Your Honor.

1          THE COURT:  Okay.  You can read from it.  That's

2  perfectly fine.

3          THE DEFENDANT:  On April 12, 2023, I robbed a deli

4  and took money.  This was in Queens, New York.

5          THE COURT:  Well, the difference is that in the

6  prior allocution he noted that he brandished a firearm.

7          MS. GLASHAUSSER:  Correct, Your Honor.  And that is

8  not part of the agreement here and it is not something --

9  that's not part of his guilty plea, Your Honor.

10          THE COURT:  Except that the guidelines range is

11  premised on the use of a dangerous weapon during the

12  commission of the offense.

13          MS. GLASHAUSSER:  That's correct, Your Honor.  That

14  legal definition is just a bit different and so this, this

15  allocution better matches both our agreement, the indictment

16  and the guideline range as well.

17          THE COURT:  Do you wish to be heard, Ms. Pak?

18          MS. PAK:  No, Your Honor.

19          THE COURT:  Are you in agreement with

20  Ms. Glashuasser's comment?

21          MS. PAK:  Yes, that's fine.

22          THE COURT:  Request?

23          Okay.  Your request is granted.

24          MS. GLASHAUSSER:  Thank you, Your Honor.

25          THE COURT:  Based on the information given to me, I

36

1   find that Mr. Young is acting voluntarily, that he understands

2   his rights and the consequences of his plea and that there is

3   a factual basis for the plea.  I, therefore, I accept his plea

4   of guilty to Count One of the indictment.

5             So, the parties shall just look for the scheduling

6   order.  Okay?  And the process for objecting to the

7   presentence report is very clearly spelled out in the

8   scheduling order.  Please keep in mind a few things, that all

9   objections, whether or not you have objections to the

10  presentence report, must be in writing, forwarded to

11  Probation, and please make sure I get a hard courtesy copy

12  right away.  And the same thing with the sentencing memoranda,

13  if you could forward a copy to Probation.  I'm sure they will

14  take it by e-mail.  And make sure that -- I only need one hard

15  courtesy copy of everything.  You don't need to send me

16  multiples.  Okay?

17            If you have any questions about it, my deputy can

18  assist you.  But it should be clearly spelled out in the

19  order, because you will have definite dates that things are

20  due.

21            And I understand that, you know, trials happen, life

22  happens.  If for some reason you can't keep the deadlines, I

23  would very much appreciate if you let us know as early as

24  possible because it might mean adjusting the sentencing date

25  or, you know, the submission of subsequent materials.

37

1          Just on the issue of the medical treatment, I know

2   that one of the last two letters that the Government sent

3   indicated that Mr. Young would be scheduled for a surgery

4   consult in December.

5          Is that still going to happen?

6          MS. PAK:  Your Honor, I believe that date was for

7   early December.  In light of the update that is due I believe

8   tomorrow to the Court, I was actually planning on following up

9   with the contact at the Bureau of Prisons to see what the

10  status of that is.

11         THE COURT:  Okay.  All right.  Okay.

12         Anything else that you would like to add on that

13  score?

14         MS. GLASHAUSSER:  Yes, Your Honor, actually.  It's

15  something probably fairly significant.

16         Mr. Young -- and I have talked about this with the

17  Government as well.  But Mr. Young has reached a point with

18  his current situation that he would like to be moved to the

19  Hudson County correctional facility.

20         In his -- at Carewell he is again without hot water.

21         He has had a broken wheelchair for many, many months

22  now.  The one he is in today came from the U.S. Marshals,

23  because he arrived here without a wheelchair at all.

24         He had no blood pressure medications over the long

25  holiday weekend.

1          And perhaps most importantly, he does not feel safe

2    at the facility due to a number of incidents with the guards

3    there who are armed and have, on more than one occasion, taken

4    their guns off of their holsters and taken them out, which

5    makes Mr. Young feel very unsafe there.

6          He was recently also handcuffed so tightly -- and

7    it's not that recently.  He still has a mark that's visible on

8    his arms from the cuffs, that you can see that they're --

9    looks like there was a welt, it's just the skin is a different

10   color there.

11         And so in that -- because of all of those things, I

12   had been working with the Government to kind of gradually work

13   on this process of moving him anyway, but today it just -- I

14   am asking the Court to step in and get him moved as quickly as

15   the Court can.  The Government does not have any objection, is

16   my understanding.

17         THE COURT:  I mean, obviously that falls within the

18   purview of the Marshals in effectuating any transfer.  I don't

19   know what the space -- facility availability is, I should say,

20   at Hudson County.

21         And my earlier defendant today is there and was

22   having some treatment issues there.  I don't know that it gets

23   better anywhere else.  Although, there was no complaint about

24   hot water.  And there's that, but...

25         MS. GLASHAUSSER:  Of course I don't know either if

39

1   it gets better.

2           THE COURT:  Yes, I don't know.  I don't know,

3   honestly.

4           But Ms. Pak, since you are going to be looking into

5   this anyway in the next day or so, would you see what can be

6   done about that?

7           MS. PAK:  Yes, Your Honor.

8           THE COURT:  I have to say, this is just, you know,

9   just it is very distressing because on the one hand Mr. Young

10  and other defendants -- he's not the only defendant that I

11  know in the courthouse that is at Carewell because the MDC

12  can't treat them properly with respect to the medical

13  treatment, but you can't go from a bad situation to a worse

14  situation.

15          And how do they not have functioning wheelchairs?

16  They are a medical facility, for goodness sake.  I don't want

17  to have to haul them in too.  And I will.

18          I mean, it's bad enough that every facility that

19  lately has been used by the MDC, healthcare facility that's

20  been used by the MDC to refer the -- transfer patients to has

21  been shut down by the various states because they're

22  incompetent, because they're not doing what they're supposed

23  to be doing.

24          I don't understand this.  Where is the

25  accountability here?

1          You know, P. Diddy gets upset and all of a sudden,

2   you know, DOJ sends people over there to go check out what the

3   conditions are, but regular people are suffering here and they

4   couldn't give two hoots.

5          So, if you could please find out what is going on

6   and see whether or not -- again, I don't know, he may be

7   asking for something that is worse at Hudson, to tell you the

8   truth, based on the reports that I got this morning from

9   another defendant.

10         MS. GLASHAUSSER:  I understand that and we've

11  been -- just one moment, Your Honor.

12         (Pause in proceedings.)

13         MS. GLASHAUSSER:  Your Honor, your comments are

14  significantly worrying Mr. Young.  It is hard to know if any

15  place would be better.

16         And I guess I will work with the Government.  Maybe

17  they can shed some light on that and what would happen at

18  Hudson.

19         THE COURT:  Because keep in mind that Hudson is a

20  local facility.  Okay?  They are contracted by the Marshals.

21  Okay?  So frankly, there is a lot more control that I could

22  exert over the Bureau of Prisons than I could over a local

23  facility.  That's the other thing.

24         You know, I don't know to what extent -- they serve

25  a different master, right?  They are serving the State.  That

41

1    is where they get the bulk of their funds and stuff from.

2           But I'm just saying, because you may be thinking

3    that it's better.  And I don't know what the word of mouth is,

4    but I just heard the opposite this morning, again, from

5    somebody who also suffers from a lot of chronic ailments.

6           So sometimes, you know that saying, the devil you

7    know, right, is better than the devil you don't know.

8           But let's just focus on at least getting you the

9    proper attention because we know that they're capable of doing

10   that where you're at right now.  They just need to get on the

11   stick.

12          I just don't understand how a medical facility

13   doesn't have a working wheelchair or sends a patient out who

14   has ambulation issues without a wheelchair.

15          MS. GLASHAUSSER:  Yes.

16          Your Honor, my understanding is that MDC is somehow

17   responsible for giving him a working wheelchair, or that's

18   what the marshals that I've been in contact with about the

19   facility have told me.  And I have been reaching out to MDC

20   and cc'ing the Government about this.  I am personally shocked

21   that they brought him here without a wheelchair.  They had him

22   walk on his broken knee to get to the car.  So that

23   obviously -- that seems -- that seems like one that should be

24   able to be easily fixed.

25          Some of the other things -- one thing that I didn't

42

1  mention that I want to make sure that is on Your Honor's

2  radar.

3          Mr. Young has been requesting a visit from a

4  therapist for some time now, from a social worker, a

5  psychiatrist, somebody that he can speak to.  After a long

6  time of requesting that, somebody was finally brought to his

7  room just last week, but they wouldn't give him any sound

8  privacy.  So with other doctors, with lawyers, the guards

9  stand outside so Mr. Young is able to have privacy with his

10 medical and legal professionals.  But for whatever -- for

11 unknown reasons with this person he wasn't able to do it, so

12 he wasn't able to speak, to speak to that doctor.

13         So that's another issue that I just now e-mailed MDC

14 about today.  But it is a significant one because I do want

15 him -- I think it's essential that he get help with his mental

16 health as well when he is requesting it.

17         THE COURT:  I think by now the MDC should know that

18 I'm not happy with them.  So tell them that if they don't want

19 to see me more unhappy that they should get on the stick on

20 this.

21         MS. PAK:  Understood, Your Honor.  I will follow up

22 on those two issues.

23         THE COURT:  Thank you very much.  I appreciate that.

24         Okay.  Well, let's see.  If you need another extra

25 day for your report, that's fine, but I would rather have as

43

1  much information as possible.

2         MS. PAK:  Understood, Your Honor.

3         THE COURT:  Okay?  All right.

4         MS. GLASHAUSSER:  If I may?  Just one other matter.

5         THE COURT:  Yes.

6         MS. GLASHAUSSER:  That maybe I neglected to mention

7  initially.

8         THE COURT:  Yes.

9         MS. GLASHAUSSER:  Because there is no hot water and

10  also because he has run out of soap and I was not allowed to

11  bring it to him today -- they said I had to come physically to

12  New Jersey to bring it, which means there will be quite a

13  delay -- Mr. Young has not had a real shower in a very long

14  time.

15         THE COURT:  Oh, my God.  Really?  In his condition?

16         THE DEFENDANT:  July 25th.

17         THE COURT:  What?

18         THE DEFENDANT:  July 25th.

19         MS. GLASHAUSSER:  He washes with, like, wipes,

20  basically.  And they warm up cups of water in the microwave so

21  that the wipes aren't freezing cold with the water.

22         THE COURT:  You know, if a landlord did that to a

23  regular tenant, they would be sued up the wazoo.

24         I don't understand this.  Doesn't the Bureau of

25  Prisons vet these places before they contract?  I don't

44

1    understand how these contracts go out.

2            All right.  So we will add that to the list.

3            I appreciate that the two lawyers are talking to

4    each other and trying to work it out.

5            Obviously, if, you know, some sort of order is

6    necessary from me, you can just reach out.

7            MS. PAK:  Understood, Your Honor.

8            THE COURT:  Okay?

9            MS. GLASHAUSSER:  Thank you, Your Honor.

10           THE COURT:  All right.  Thank you.

11           Marshals, thank you.

12           (Matter concluded.)

13

14                  *    *    *    *    *.

15

16   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

17

18      /s/ Andronikh M. Barna              December 10, 2024

19   _____    _____
        ANDRONIKH M. BARNA                   DATE

20

21

22

23

24

25